COMMONWEALTH *vs.* ROY D. CUTLER.

Middlesex.   May 5, 1969. — June 24, 1969.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Evidence*, Admissions and confessions, Of prior misconduct, Of state of
    mind, Relevancy and materiality, Photograph. *Constitutional Law*,
    Admissions and confessions, Search and seizure. *Practice, Criminal*,
    Exceptions: failure to save exception. *Search and Seizure.*

At the trial of a defendant for manslaughter of his child, a statement of
    the defendant to a police officer, that bruises on the child's body had
    occurred while he was out playing, was admissible where it appeared
    that the statement was made in answer to a general inquiry by the
    officer at a hospital while the child was still alive and before the de-
    fendant admitted to police that he had "licked" the child or any ac-
    cusatory inquiry had focused on the defendant, even though previously
    the officer had telephoned his superiors "relative to at least further
    investigation." [246–247]
At the trial of a defendant for manslaughter of his child, there was no
    reversible error in the admission of a statement, made to the defendant
    about four months before the child's death by one who knew the child
    and on two or three occasions had seen marks on his body, that the
    defendant should not hit the child "because he bruises easy," since the
    statement tended to show that the defendant's attention had been
    called to the effect on the child's skin and body of hitting him and
    other evidence respecting severe beatings of the child by the defen-
    dant was introduced. [249]
Police photographs of the interior of the house of a defendant accused of
    committing a crime therein would be inadmissible at his trial if his
    consent to entry of police to take the photographs was not voluntary.
    [250]
Upon appeal from conviction of a defendant for manslaughter of his
    child through the infliction of blows, no substantial risk of a miscarriage
    of justice was apparent by reason of the admission of police photo-
    graphs of the interior of the defendant's house where he took no objec-
    tion or exception to their admission and they were relevant as tending
    to show the absence of objects on which a fall would be likely to give
    the child the type of sharp blow which caused his death. [250]

INDICTMENT found and returned in the Superior Court on
August 9, 1967.

The case was tried before *Hale*, J.

*Robert A. Novick* (*Reuben Goodman* with him) for the defendant.

*Barry M. Haight*, Assistant District Attorney, for the Commonwealth.

WHITTEMORE, J. This is an appeal under G. L. c. 278, §§ 33A–33G, from a conviction for manslaughter. The victim was the defendant's three-year old son, Lawrence A. Cutler. The defendant argues error in the admission in evidence of a statement made by him, of a statement made by another to him concerning his prior treatment of his son and his reply, and of photographs of the interior of his house.

1. At the trial, Officer Ward of the Waltham police testified that on July 10, 1967 (Monday), about 1:45 A.M. he received a call to go to the defendant's house in Waltham. The defendant was waiting, outside the house, and led Officer Ward and another officer inside. Officer Ward saw a child lying on the sofa, picked him up, and took him to the emergency room of the Waltham Hospital. When the child was undressed in the emergency room, Officer Ward observed several bruises on the lower part of his body. He then went out into the lobby and asked the defendant how the bruises occurred. The reply, received subject to objection and exception, was that they occurred while the child was out playing. In cross-examination Officer Ward testified that before he spoke with the defendant he had telephoned his superiors "relative to at least further investigation." No motion to strike was made.

The defendant's answer to Officer Ward was inconsistent with the defendant's later admissions to the police that he had "licked" the child.

We rule that Officer Ward's question and the defendant's answer were admissible. The inquiry was a general inquiry; it had not focused on the defendant as an accused. Compare *Escobedo* v. *Illinois*, 378 U. S. 478, 490–491; *Commonwealth* v. *Guerro*, 349 Mass. 277, 281–282. The atmosphere at the hospital was not custodial. The defendant had not been deprived of his freedom in any way when this natural pre-

liminary question was asked. Compare *Miranda* v. *Arizona,*
384 U. S. 436; *Orozco* v. *Texas,* 394 U. S. 324. See as to the
reasonable application of the *Miranda* rule, *Commonwealth* v.
*Wilbur,* 353 Mass. 376, 382–383, and *Commonwealth* v.
*Fisher,* 354 Mass. 549, 554–555. The child was still alive
at the time. Sometime later that day, the defendant was
told he was not then a suspect. That Officer Ward had
called the police station is not conclusive. That evidence
does not show that he recognized this as a "battered child
syndrome" nor that his report to the station was other than
his usual report made after responding to a radio call. We
cannot assume that Officer Ward had focused on the de-
fendant as a criminal suspect.

2. The defendant's wife's stepfather testified on March 1,
1968, without objection, that he had known the deceased
child two years, and on two or three occasions had seen
marks on his body. He testified that "a little over a year"
prior to the time of his testimony he had spoken to the
defendant about it and (subject to objection and exception)
that he had said to the defendant that he should not hit
Larry "because he bruises easy. And, he told me — he
didn't exactly tell me to mind my own business, but he said
he will take care of it. I says, okay. That's all I said and
I just walked out of the room." The judge instructed the
jury that the evidence was not admitted as proof of any act
by the defendant as charged but "merely for the purpose of
showing what his disposition may have been with respect
to this child. It's just a general attitude, evidence as to a
general attitude rather than a specific point."

Detective Lieutenant Cronin of the State police had al-
ready testified that the defendant said that on a Saturday
evening, July 8, 1967, he had given his child the "most
severe licking I ever gave him in my life, it was very severe."
The defendant had said that neither he nor his wife physically
punished the child on Sunday evening, July 9 (although his
wife had said that the child had messed his pants and
"should get a licking"), but that he saw the child out of his
bed some time after 12:15 A.M. Monday, and told him to get

back in bed, and that he heard a "thump" as the child ran back to bed. He then said he heard the child moaning and told his wife to check him. Mrs. Cutler did so, and came and told him the child did not look well. The defendant looked at the child and decided to call the ambulance.

There was corroboration, in other police testimony, of the defendant's admissions.

There was medical testimony that the child had multiple bruises (about eighty-four), some inflicted recently and others of longer duration. An autopsy revealed a recent rupture or splitting of the liver and it was stated that the child could have survived with this liver condition for "a couple of hours, or less." There was further medical testimony that such an injury to the liver would require a "rapid blunt blow of great intensity," and it was consistent with a beating with hands or feet or an instrument and that a fall from bed or otherwise would be an insufficient cause. Death occurred because of the ruptured liver and consequent intra-abdominal bleeding. It was "a battered child syndrome as a result of homicide."

Where the only relevance of prior conduct is to show that the person charged has a disposition to do acts of a certain kind it is not admissible to prove that he did such an act. *Commonwealth* v. *Stone*, 321 Mass. 471, 473–474. *Commonwealth* v. *Welcome*, 348 Mass. 68, 70 (citing Stone, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv. L. Rev. 954, 965–966). See *idem.* 976; Stone, The Rule of Exclusion . . . America, 51 Harv. L. Rev. 988, 1031–1037; Leach and Liacos, Handbook of Massachusetts Evidence, 302. Such evidence may have other relevance and hence be admissible. See Wigmore on Evidence (3d ed.) §§ 218, 363, 416. Thus it may show a continuing hostility to or resentment because of frustrated passion toward a murder victim and be relevant on the issue of motive or intent. *Commonwealth* v. *Bartolini*, 299 Mass. 503, 510–511.[1]   See also

---

[1] In the *Bartolini* case evidence was held competent that tended to show that on two occasions within about a month preceding the date of the murder the defendant had assaulted the deceased at her home, and that after one of

*Commonwealth* v. *Machado*, 339 Mass. 713, 715 (Evidence of other sexual misconduct with the complaining minor is admissible to show inclination).

Evidence that the defendant had admitted by implication that he had hit the child sufficiently to cause bruises left to conjecture the mental attitude that underlay those prior acts. So far as the testimony of the conversation with the stepfather was evidence only of like prior misconduct it was excludable under the rule of the *Stone* and *Welcome* cases.

The testimony however had another aspect. It tended to show that the defendant's attention had been called to the effect on his child's skin and body of hitting him. This was of some relevance to the issue of wantonness or recklessness, and, in the light of the other evidence in the case we rule that there was no reversible error in connection with the admission of the testimony. We refer to the testimony of the several police officers as to the defendant's direct admissions that he had very recently beaten the child with great severity, merely for taking food from the refrigerator, and as to his implicit admissions that beating the child was his practice as a means of correcting him. We refer also to the testimony of the extent of the bruises on the child's body and the photographs which were in evidence showing the bruises. There was no objection to the judge's instruction concerning the evidence.

3. Photographs were introduced of the interior of the defendant's house taken by police officers who were admitted

these occasions many black and blue marks were seen on her body. The court (Qua, J.) said: "The jury were repeatedly instructed in substance that this evidence was admitted solely to show the state of mind of the defendant and his feeling toward the deceased, and that the defendant could not be found guilty of the crime charged . . . because of any previous offences . . . . With this instruction the evidence was competent. Taking this in connection with other evidence, it might have been found that the defendant's object on the occasions described was to compel the deceased to have intercourse with him against her will. Whether or not this should be found to have been his purpose, the evidence tended to show an attitude or state of mind on the part of the defendant toward the deceased which predisposed him to attack her when the opportunity offered. The occasions were sufficiently near in time to permit an inference that this state of mind continued until the date of the killing. The evidence . . . bore upon the possible motive of the defendant. No objection was made to the instruction given, and no additional instructions as to the application of this evidence appear to have been asked for."

by the defendant in one instance and his wife in the other. There was no objection or exception. Subsequent to the trial, and before the appeal, *Bumper* v. *North Carolina,* 391 U. S. 543, 546–549, was decided which held that voluntary consent to a search was not shown where consent to police entry was obtained through announcing the existence of a search warrant and no warrant was produced at the trial. The defendant now argues that because of the *Bumper* case he should have an opportunity to show that the police entry to his house to take photographs was not obtained through the free and knowing consent of himself or his wife.

There is no basis for disregarding our rule that objection must be made at trial. *Commonwealth* v. *Scott,* 355 Mass. 471, 476. The evidence as to the photographs was obviously inadmissible if the consent to police entry was not voluntary, and the defendant did not need the *Bumper* case to know that an objection was appropriate. "*Bumper* [in this aspect], as the citations contained therein demonstrate, announced no new or novel constitutional rule . . . ." *United States* v. *Retolaza,* 398 F. 2d 235, 242 (4th Cir.).

The photographs tended to show the absence of objects likely to have given the child the type of sharp blow which caused his death. This was relevant evidence and in affirming the judgment after a trial in which it was used there is no "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 564.

*Judgment affirmed.*