STATE OF CONNECTICUT *v.* RONALD JACKSON

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued October 3—decision released November 21, 1978

*Thomas Corradino,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

BOGDANSKI, J. On November 8, 1974, between 4:30 and 4:45 p.m., two young black men armed with handguns and wearing stocking masks over their faces held up the Reliable Liquor Store on Dixwell Avenue in New Haven. One of the men was wearing a black leather jacket. The only persons in the store at the time of the holdup were the proprietor and his wife, Charles and Amelia Signore. As the men were leaving the store they both opened fire with

their handguns and one of the shots struck the proprietor in the chest. He was taken to the hospital where he died one week later.

It is in connection with that robbery and the shooting death of Charles Signore that the defendant, Ronald Jackson, was tried and found guilty of one count of felony murder, in violation of § 53a-54c of the General Statutes.[1] After the jury returned their verdict, the defendant moved to set it aside on the ground of insufficient evidence. The court denied the motion and the defendant has appealed, assigning error in the denial of his motion to set aside the verdict.

It is axiomatic that the state, in a criminal case, has the burden of proving every essential element of the crime charged beyond a reasonable doubt. *State* v. *DeCoster,* 147 Conn. 502, 504, 162 A.2d 704; *State* v. *Newman,* 127 Conn. 398, 400, 17 A.2d 774. In order to meet that burden in this case the state was required to introduce evidence establishing beyond a reasonable doubt that the defendant, Ronald Jackson, was a participant in the November 8 robbery of the Reliable Liquor Store and that the defendant or another participant in that robbery caused the death of the proprietor.

At the trial, Mrs. Signore testified to the November 8 robbery and the shooting of her husband, but because of the stocking masks worn by the participants she was unable to identify any of them. On

---

[1] General Statutes § 53a-54c provides, in pertinent part: "A person is guilty of murder when acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of . . . such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

the issue of the cause of the victim's death, the state offered the evidence of three medical doctors, each of whom testified that the victim died as a direct result of the gunshot wound received during the holdup.

The state then called John Gates as a witness. Gates testified that on May 13, 1976, he entered a plea of guilty to murder in connection with his part in the November 8 robbery and the shooting death of the proprietor. He also testified that in exchange for his plea the state agreed to recommend a minimum sentence of ten years to life. Gates then invoked the fifth amendment and refused to testify further, leaving the state with the burden of establishing by other means that the defendant Jackson was the other participant in that robbery.

The state's case on the issue of the defendant's involvement in the November 8 robbery consists almost entirely of the testimony of two witnesses, Irish Wright and Nancy Creach.[2] Irish Wright testified that she had known the defendant Jackson for about three years, that she had known John Gates for about the same period of time, and that during the time that she had known these men, they were frequently together. She further testified that sometime in the latter part of October or early November of 1974, Jackson came to her house and asked if she had a pair of ladies stockings which he could have. When she told him that she did not, he left. With the defendant at the time of this con-

---

[2] When first called to the stand, Miss Creach refused to testify stating that "due to my relationship with the Jackson family for a long time, I find it impossible to testify against him." After the court warned Miss Creach that she would be held in contempt of court if she persisted in her refusal to testify, she changed her mind and did testify.

versation was a Mr. McLean, generally referred to as "Bunky."[3] Although she could not recall the exact date of this conversation with Jackson, she did say that it was on the same day as a conversation which she had with her friend, Nancy Creach. She testified that Nancy Creach came to her house between 7:30 and 8:00 p.m. of the same evening that Jackson had asked her for the stockings. She also stated she was certain that the conversation about the stockings took place after she got home from work and that she usually got home between 4:30 and 4:45 p.m. She admitted that the conversation could have occurred as much as a half hour or an hour after she got home. When asked about the date of this conversation, she admitted that it could have taken place in October, November or December.

Nancy Creach testified that one evening she heard on television that a liquor store had been held up by three black men in stocking caps and that she went to Irish Wright's house to tell Irish about what she had heard. She stated that she and Irish Wright discussed their suspicions about the robbery. She never testified as to the date of the news program on which she first heard about a robbery. She also could not recall whether it was on the six or eleven o'clock news. In response to further questions she stated at one point that "I am not sure if it was the six o'clock news or what. I don't think so," and, later, "When I gave this statement [to the police] I said I wasn't actually sure was it the six o'clock or eleven o'clock. I don't think it was the six o'clock because it happened after that. It was dark outside and it usually is after that time."

---

[3] Since Mr. McLean was deceased at the time of trial, statements made by him to Miss Creach could not be used at trial.

Although Nancy Creach's testimony on this next point was vague and confusing, it appears that she had two or possibly three conversations later that same evening with the defendant Jackson. She never testified as to the exact or even approximate times of those conversations. She did say that after talking with Irish she went back home and that later that evening Jackson and McLean came to her house and talked with her about her talking with Irish Wright. She stated that the defendant told her that "just talking with anybody could start something up."

At one point she testified that when she spoke with Jackson he was wearing a rolled-up stocking cap under a hat. She later testified that when he came to her house "he did not have on a hat and the stocking thing, he had a long black leather— that was all." Elsewhere in her testimony she stated that she saw *three* men that night. When asked whether all three men had on stocking masks, she stated, "No, I am not saying all three men, no. Because I am not quite sure."

At one point Nancy Creach stated that while talking with Jackson about the robbery she "asked him did the man die, and that is when he said he did not think so that night." At another point she testified that "I was talking about the liquor store holdup and I was talking about the guy getting shot and what might happen, and I asked him [the defendant] and he in a confused manner he told me he didn't know but he think he did shoot the man." On cross-examination she stated that this conversation with the defendant about the shooting occurred a couple of days after the incident. She

also admitted that she could not state from her memory when the conversation took place or even the kind of store involved in the robbery.

When a jury verdict is challenged on the ground that the evidence is insufficient to sustain the verdict, the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Jones,* 173 Conn. 91, 376 A.2d 1077; *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263. In ruling on such a motion, the evidence presented at the trial must be given a construction most favorable to sustaining the jury's verdict. *State* v. *Chetcuti,* supra. If, however, the evidence is insufficient to meet the burden of proof of guilt beyond a reasonable doubt, bearing in mind that the state has the burden of establishing by such proof every essential element of the crime charged, the verdict must be set aside. *State* v. *Benton,* 161 Conn. 404, 406, 288 A.2d 411; *State* v. *Kelsey,* 160 Conn. 551, 553, 274 A.2d 151; *State* v. *McGinnis,* 158 Conn. 124, 129, 256 A.2d 241.

Accepting the testimony of the witnesses Creach and Wright, the jury could have found that the defendant Jackson was involved in a robbery and a shooting. Such a finding, in and of itself, however, is not enough to sustain the verdict in this case. The defendant Jackson was being tried for the November 8 robbery of the Reliable Liquor Store and the shooting death which followed. The state had the burden of establishing beyond a reasonable doubt that this defendant was a participant in that particular robbery. From the evidence presented, it cannot be

said with any reasonable assurance that the testimony of Irish Wright and Nancy Creach necessarily referred to the November 8 robbery. Neither witness could recall the exact or even approximate dates of the events to which they testified. Nancy Creach testified that she heard a television newscast to the effect that a liquor store had been held up by three black men in stocking caps and that later that same evening she saw three men, some or all of whom were wearing stocking masks. Since the November 8 robbery for which the defendant was being charged involved only two men, there is at least some question whether her testimony relates to the events surrounding the November 8 robbery or to some other robbery committed by three black men in stocking caps.

Even if we assume that the testimony of Wright and Creach does refer to events surrounding the November 8 robbery, there is still a question whether that evidence was such as to constitute proof beyond a reasonable doubt. The state prosecuted its case on the theory that the robbery was committed by Gates and Jackson. The testimony of Wright and Creach would seem to indicate that the robbery may well have been committed by McLean and Jackson. It was McLean and not Gates who was seen with Jackson immediately before and shortly after the alleged robbery, but it was Gates who pleaded guilty to murder in connection with his part in the November 8 robbery.

"As has been said so often, proof beyond a reasonable doubt is such proof as precludes every reasonable hypothesis except that which it tends to support and is consistent with the defendant's guilt and inconsistent with any other rational conclu-

sion." *State* v. *Smith*, 138 Conn. 196, 200, 82 A.2d 816; *State* v. *Mullings*, 166 Conn. 268, 272, 348 A.2d 645; *State* v. *Dubina*, 164 Conn. 95, 97–98, 318 A.2d 95. Moreover, inferences which do not have a basis in facts established by the evidence cannot be drawn or relied upon to sustain a verdict.

A review of the state's evidence in its totality discloses that the state failed to prove beyond a reasonable doubt the essential element of the defendant's participation in a specific robbery, i.e., the robbery of the Reliable Liquor Store on November 8, 1974. Without such proof, it cannot be said that the "cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Chetcuti*, supra, 172. We are constrained therefore to conclude that the trial court erred in denying the motion to set aside the verdict.

There is error, the judgment is set aside, and the case is remanded with direction to render judgment that the defendant is not guilty and to order that he be discharged.

In this opinion the other judges concurred.