STATE OF CONNECTICUT *v.* FORREST TUCKER

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued April 3—decision released July 1, 1980

*Jonathan E. Silbert,* special public defender, for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

PETERS, J. This case arises out of the death of a battered child. The defendant Forrest Tucker was charged by indictment with murder of the child, in violation of General Statutes § 53a-54a (a),[1] and by information with risk of injury to the child, in violation of General Statutes § 53-21.[2] The trial court, *O'Sullivan, J.*, agreed, on motion by the defendant, to sever the murder and the risk of injury counts. Thereupon the state elected to prosecute first the indictment of murder. The defendant was tried to a jury and was acquitted of murder but convicted of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[3]

---

[1] General Statutes § 53a-54a (a) provides: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] General Statutes § 53a-55 (a) (1) provides: "MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person."

The court, *O'Brien, J.,* denied the defendant's motion for acquittal and for a new trial, and this appeal followed.

From the evidence presented at the trial the jury could reasonably have found the following: The victim, Charles Patten, also known as Charles Manos, Jr., or Chuckie Manos, was born on February 5, 1976, and died on June 12, 1977. He lived with his mother, Nancy Patten. In March of 1977, the defendant moved in with the mother and the child. During the period from March to June, 1977, various neighbors observed a variety of incidents involving the defendant and the child which resulted in visible injuries to the child.[4] The child suffered repeated bruises, black eyes and lumps on his head. These incidents of abuse were denied by the defendant.

Three specific events involving injury to the child before the day of his death are essentially undisputed. On April 27, 1977, the mother took the child to a hospital because he had fallen out of his crib and injured his left leg; defense witnesses suggested, at the trial, that this fall left the child accident prone. On May 14, 1977, while the child was in the defendant's care, he was again injured. According to the defendant, he fell off his toy horse. Concerned about the child's swollen forehead and closed eyes, the mother took him to a hospital the following day, falsely informing the hospital staff that the child's injuries had been caused by falling down a flight of stairs. Over the Memorial Day weekend, the child sustained further injuries when

---

[4] Efforts by one or more of the neighbors to involve the department of children and youth services did not succeed, although the New Haven police department did send a detective on two occasions, both on May 17, 1977, to investigate complaints of child abuse.

a bucket in which he was standing tipped over, causing him to fall out; the defendant, in close proximity, did not intervene to prevent the accident. The visible injuries attributable to these events had sufficiently faded by June 8, 1977, so that photographs taken on that day showed no bruises or marks other than a scratch above the child's left eye.

The events that led up to the child's death began with the child's normal awakening on June 10, 1977. Although he vomited once either before or after his breakfast, he was thereafter walking about. Later that morning, the child was left alone with the defendant for a period of thirty to sixty minutes. Upon the mother's return, she noticed that the child's eyes seemed to be rolling, that he was acting strangely, and that he appeared to be tired. The defendant, asked whether anything untoward had occurred in the mother's absence, claimed then, and thereafter, that nothing had happened. That afternoon, the child appeared listless, and when he was undressed for his bath, it was discovered that his scrotum was bruised. The child vomited repeatedly and was obviously unwell. That evening, he was found lifeless in his crib. He was taken to the hospital and pronounced dead shortly after midnight on June 11, 1977.

The defendant left the apartment, taking the family car, to go to his place of employment during the afternoon of June 10, 1977. He called twice that evening to inquire after the child. The mother testified that during the second conversation, the defendant responded to her continued concern by saying, "Well, if he is going to die, he is going to die." The defendant testified to the contrary, saying that he had merely said, "He is your kid. Do what you want."

An autopsy conducted on the child on June 12, 1977, by Daniel Sheahan, the hospital pathologist, revealed extensive external and internal injuries. The external injuries, some of which were quite recent, included injuries to the child's scalp, face, body, chest and buttocks. The internal injuries included bruises to the scalp under the hairline, multiple rib fractures, perforation of the small intestine, hemorrhage of the transverse colon, inflammation of the pancreas, and blood leakage into the abdomen. The cause of death was determined to be a blunt injury of considerable force, a punch or a blow, to the child's abdomen, which resulted in perforation of the small intestine. Such an injury would not cause death immediately but would result in death within a relatively short period after infliction of the injury.

Other medical testimony established that the injuries sustained by the child are consistent with those associated with the battered child syndrome. The type of intestinal injury in these cases differs markedly from that found in accidental abdominal injuries. The medical testimony also indicated that the child's healing rib fractures were unlikely to have been caused either by a fall from a crib or a fall from a toy horse.

As a result of investigation into the child's death, his mother and the defendant were arrested and charged with risk of injury to a child. Only the defendant was indicted for murder. Both the mother and the defendant testified at the trial which led to the conviction of first degree manslaughter that is now before us on this appeal.

The defendant claims that his conviction should be overturned because the trial court erred: (1) in

instructing the jury that manslaughter in the first degree may be a lesser degree of homicide and thus may be a lesser included offense within an indictment for murder; (2) in admitting evidence of prior mistreatment of the victim by the defendant; (3) in denying the defendant's motion for acquittal because of insufficiency of the evidence to permit a finding of guilty beyond a reasonable doubt on the charge of manslaughter in the first degree; and (4) in denying the defendant's request to have the jury polled. We find none of these claims of error to be persuasive.

I

The defendant's first claim of error arises out of the trial court's instructions to the jury, which charged that the jury could convict the defendant either of murder, as charged in the indictment, or of first degree manslaughter, as a lesser included offense under General Statutes § 53a-45 (c).[5] The state had requested that the court charge on all four degrees of manslaughter: murder in violation of General Statutes § 53a-54a; manslaughter in the first degree in violation of General Statutes § 53a-55; manslaughter in the second degree, reckless homicide, in violation of General Statutes § 53a-56; and negligent homicide in violation of General Statutes § 53a-58. The defendant had originally requested that the court charge only on murder, but thereafter the defendant made a timely objection to the charge as given, urging that once the court had charged on any one lesser degree of homicide it was obligated to charge on all of them.

[5] General Statutes § 53a-45 provides in relevant part: "MURDER PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. WAIVER OF JURY TRIAL. FINDING OF LESSER DEGREE. . . . (c) The court or jury before which any person indicted for murder is tried may find him guilty of homicide in a lesser degree than that charged."

The defendant's first argument in this connection reverts to his original position that the court should have limited the jury's consideration to the indicted charge of murder. The essence of the defendant's position is that there can be no lesser included offenses of the crime of murder. The defendant argues that because specific intent to cause death is a requisite element of the crime of murder, no other intent, such as that associated with lesser degrees of homicide, is necessarily encompassed by, or consistent with, the crime of murder.

This argument was extensively addressed and refuted in *State* v. *Rodriguez,* 180 Conn. 382, 398–409, 429 A.2d 919 (1980). We there held (p. 405) that, "[b]y the charge on the greater offense of murder, the defendant is put on notice that he will be put on trial for his action in causing the death of another person. Thus, having been given notice of the most serious degree of culpable intent by the murder indictment, he is implicitly given notice of those lesser included homicides that require a less serious degree of culpable intent." Applying the conditions for a lesser included offense instruction set out in *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), *Rodriguez* further determined (p. 407) that, for the purposes of the second condition of *Whistnant,* "an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense."

The defendant's second argument arises out of his objection to the instructions as given and to the failure to charge on lesser degrees of homicide other than first degree manslaughter. It is by no means

clear that the defendant is entitled now to raise this claim, in light of our holding in *State* v. *Whistnant*, supra, 583, that a charge on a lesser included offense is not constitutionally required in the absence of a timely request for such an instruction. The defendant cannot, however, sustain this argument even if this procedural obstacle could be said to have been overcome, either by the state's requested instruction or by the defendant's timely objection. In order to prevail, the defendant must demonstrate, in accordance with the fourth condition of *Whistnant*, supra, 588, that "the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." In view of the defendant's repeated denial of any involvement whatsoever in the child's death, he has failed to make this showing. The defendant has pointed to no evidence that would have warranted acquittal of first degree manslaughter and conviction of reckless or negligent homicide.

## II

The defendant's second claim of error contests the admissibility of certain evidence that the trial court permitted the jury, with limiting instructions, to hear. At the trial, testimony was offered, by the child's mother and by neighbors, concerning acts of alleged mistreatment of the child by the defendant from March, 1977, to June, 1977. None of these acts was directly related to the child's death. There were no witnesses to the interaction between the defendant and the child on the morning of June 10, 1977. The defendant took timely objection to this line of testimony, maintaining it to be irrelevant and prej-

udicial. The state argued for its admissibility as tending to show intent, identity, malice, motive or a system of criminal activity. After conducting extensive voir dire hearings, the trial court, over repeated exceptions by the defendant, allowed the testimony to be presented to the jury. In its instructions to the jury, the court adverted to this testimony and charged the jury that the evidence was neither to be considered as probative of guilt of risk of injury to a minor child nor as showing a propensity to commit the crime of murder. The court went on to caution specifically that the evidence might be considered as relative "only to the question of whether or not the defendant has a requisite specific intent necessary to commit the crime of murder. You are not permitted to consider that evidence for any other purpose and as to that purpose you must weigh such evidence as you do all other evidence in this case."

The defendant argues here, as he did at the trial, that the challenged testimony lacked any probative value with respect to intent to commit murder. The witnesses testified to various acts of abusive conduct by the defendant in: dropping the child from his bicycle to the ground; causing the child to fall out of his stroller and to hit his head; throwing him down onto a cement floor; shaking him violently; and slapping and hitting him. While it is true that these acts of misconduct do not in and of themselves prove intent to murder, they are relevant to establish, in connection with the question of intent, a pattern of behavior and an attitude toward the child that is indicative of the defendant's state of mind. See *State* v. *Carr,* 172 Conn. 458, 463, 374 A.2d 1107 (1977); *State* v. *Sanchez,* 94 Idaho 125, 483 P.2d 173 (1971); *Commonwealth* v. *Cutler,* 356 Mass. 245,

248, 249 N.E.2d 632 (1969); *State* v. *Mattingly,* 573 S.W.2d 372, 374 (Mo. App. 1978). This evidence was also admissible to prove that the death of the child resulted from an intentional act rather than from an accident. McCormick, Evidence (2d Ed. 1972) § 190, esp. pp. 450-51.

In the alternative, the defendant argues that, even if probative, the evidence should have been excluded because of its prejudicial nature. Mindful of the inherent difficulties of balancing probative value against prejudicial effect, we have repeatedly entrusted resolution of this determination to the sound discretion of the trial court judge. See *State* v. *McCarthy,* 179 Conn. 1, 22, 425 A.2d 924 (1979); *State* v. *Turcio,* 178 Conn. 116, 129, 422 A.2d 749 (1979); *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973); *State* v. *Holliday,* 159 Conn. 169, 173, 268 A.2d 368 (1970). That discretion is subject to reversal only where an abuse of discretion is manifest, or where injustice appears to have been done. *State* v. *McCarthy,* supra, 22; *State* v. *Turcio,* supra, 129; *State* v. *Hauck,* 172 Conn. 140, 144, 374 A.2d 150 (1976); *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62 (1970); McCormick, Evidence (2d Ed. 1972) § 190, pp. 453-54; 1 Wharton, Criminal Evidence (13th Ed. 1972) § 241.

We find no abuse of discretion or manifest injustice on the record before us. Intent was a crucial element in the crime charged. In order to meet its burden of proving intent, the state was forced to rely on probative inferences, since the circumstances under which the crime allegedly took place effectively prohibit direct evidence. In battered child cases, the youth of the victim and the tendency

of other family members not to intervene, as in sexual assault cases involving children; see *State* v. *Hauck,* 172 Conn. 140, 143–47, 374 A.2d 150 (1976); make reasonable the exercise of judicial discretion to allow evidence of prior abusive treatment of the child victim. As McCormick notes, courts generally have been more ready to admit evidence of other misconduct when the evidence is offered on the ultimate issue of knowledge, intent or state of mind than when it is offered to prove identity or the commission of the criminal act with which the defendant is presently charged. McCormick, supra, 452. Furthermore, McCormick suggests that the exercise of wise discretion requires the trial court to consider whether other evidence, equally probative and less prejudicial, was available to the state. McCormick, supra, 453. The absence of such an alternative in this case lends additional support to the action of the trial court.

## III

The defendant's third claim of error challenges the sufficiency of the evidence to support the jury's verdict finding him guilty of manslaughter in violation of General Statutes § 53a-55 (a) (1).[6] This claim was raised in timely fashion in the trial court by an unsuccessful motion for acquittal after the jury had rendered its verdict.

The issue upon such a challenge to the verdict of a jury is whether the cumulative effect of all the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979). The state has the burden of proving every essential element of the crime charged, beyond a

---

[6] See footnote 3, supra.

reasonable doubt. *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978). The jury may draw reasonable and logical inferences from the facts established by the state, but may not resort to speculation and conjecture. *State* v. *Saracino,* supra. Our review of the evidence before the jury, however, requires us to give it a construction most favorable to sustaining the verdict reached by the jury. *State* v. *Jackson,* supra.

For first degree manslaughter, the state had the burden of establishing the facts necessary to resolve three major issues at the trial: What caused the child's death? Who caused the child's death? Was the child's death the result of an intentional act to inflict serious physical injury? Only the first of these issues is no longer in dispute. The medical evidence established, with overwhelming and uncontradicted detail, that the child died from an inflicted injury and not from an accidental injury. The other two issues were, however, seriously contested by the defendant, and the claim now being pressed is that the state failed to establish its case on these two elements of the crime beyond a reasonable doubt.

In determining whether it was the defendant who had inflicted the injury that caused the child to die, the jury had the right to rely both on the established facts and on the inferences reasonably to be drawn therefrom. *State* v. *Avcollie,* 178 Conn. 450, 456, 423 A.2d 118 (1979); *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978); *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *Dubina,* 164 Conn. 95, 98, 318 A.2d 95 (1972); *State* v. *Benton,* 161 Conn. 404, 410, 288 A.2d 411 (1971). It is clear that the defendant had the opportunity to commit the crime during the time the child

was in his exclusive care. The jury had the right to believe the mother and not the defendant concerning the physical condition of the child when she left him with the defendant and upon her return. The jury had the right to believe the mother and not the defendant about the conversation on the eve of the child's death in which the defendant allegedly expressed callous indifference about whether the child might die. *State* v. *Ballas,* 180 Conn. 662, 674–75, 433 A.2d 989 (1980). This evidence, in its totality, was sufficient to permit the jury to conclude beyond a reasonable doubt that it was the defendant who had injured the child.

The evidence on intent, although necessarily more circumstantial, similarly meets the test established by our cases. *State* v. *Holley,* 174 Conn. 22, 26, 381 A.2d 539 (1977); *State* v. *Ruiz,* 171 Conn. 264, 271, 368 A.2d 222 (1976); *State* v. *Bzdyra,* 165 Conn. 400, 403, 334 A.2d 917 (1973). The neighbors' testimony concerning prior intentional abusive conduct toward the child would have warranted the jury's finding of intentional misconduct on the day in question. The medical testimony which the defendant does not challenge established that the child died from a blunt injury or blow of considerable force. Taken together with the jury's assessment of the defendant on the basis of his testimony on his own behalf, this evidence was legally sufficient to support the conclusion that the defendant had created "a substantial risk of death" or caused a "serious impairment of health or serious loss or impairment of the function of any bodily organ." General Statutes § 53a-3 (4). It is not necessary that intention be proven by direct statements or directly observed conduct of the defendant if the evidence indirectly suffices to establish, beyond a

reasonable doubt, the intent of the defendant to commit the crime with which he has been charged. *State* v. *Holley,* supra, 25–26; *State* v. *Bzdyra,* supra.

## IV

The defendant's fourth and final claim of error arises out of his request that the jury be polled after they returned their verdict of guilty of manslaughter in the first degree. The state opposed his motion on the ground that polling was a matter for the discretion of the trial court. The court denied the motion without comment, and the defendant duly excepted.

This claim of error is twofold. The defendant first argues that the rules of practice now confer an absolute right to have the jury polled whenever a party so requests. In the alternative, the defendant argues that even if the decision to poll is discretionary with the trial court, that discretion was abused in this case.

The defendant's first argument must be resolved by examination of the language of the Practice Book. Practice Book, 1978, § 869, provides in part: "After a verdict has been returned and before the jury have been discharged, the jury *may* be polled at the request of any party or upon the judicial authority's own motion." (Emphasis added.) We read this language to continue the discretionary rule which has long been the law in this state. See, e.g., *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *Marshall,* 166 Conn. 593, 598, 353 A.2d 756 (1974); *State* v. *Shelton,* 160 Conn. 360, 363–65, 278 A.2d 782 (1971); *State* v. *Tucker,* 146 Conn. 410, 415, 115 A.2d 876 (1959); *State* v. *Hoyt,* 47 Conn. 518, 533–34 (1880).

The defendant's second argument of abuse of discretion is equally unavailing. The only specific claim by the defendant is that polling was required because the jury, during their deliberations, had returned to the courtroom with questions regarding the charges submitted to them. This fact, standing alone, is insufficient to demonstrate that the trial court's failure to have the jury polled constituted an abuse of discretion.

There is no error.

In this opinion the other judges concurred.