STATE OF CONNECTICUT *v.* JOHN C. HOEPLINGER
(3258)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued October 7—decision released November 18, 1986

*Richard Emanuel,* for the appellant (defendant).

*Richard F. Jacobson,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Frank S. Maco,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. There are three issues involved in this appeal. The first is whether the trial court erred in refusing to suppress certain oral statements of the defendant which were transcribed by the police during the early hours of their investigation into the homicide of his wife. The second issue is whether the trial court erred in allowing the testimony of two witnesses regarding certain statements made by the defendant's wife to them. The third issue is whether the trial court erred in its charge to the jury on circumstantial evidence and reasonable doubt.

The defendant was indicted for murder, a violation of General Statutes § 53a-54a (a). The defendant pleaded not guilty to the indictment and elected to be tried by a jury. The jury found the defendant not guilty of murder, but guilty of manslaughter in the first degree, a violation of General Statutes § 53a-55 (a) (1). From the judgment rendered on the jury's verdict the defendant has appealed.

I

Certain facts are relevant to a discussion of the first issue. The defendant's wife was bludgeoned and strangled to death in the early morning hours of May 7, 1982. The defendant telephoned the police requesting that an ambulance be dispatched to his residence, as his wife was "in terrible shape" and had blood "all over her face and head."

A police officer met the defendant at the scene shortly thereafter. The defendant, with bloodstains evident on his tee shirt and hands, met the officer and led him into the house. In the house, the victim lay on a couch, wrapped in sheets and blankets, a massive laceration on her forehead. There were bloodstains on the wall next to the couch, and on the floor in the foyer by the front door. The defendant was then asked to wait outside the home, in the officer's patrol car.

A second officer arrived and, while he and the first officer conferred, the defendant reentered the house. The defendant was again led to the patrol car, and while seated there he related the following: he had awakened during the night, realized that his wife was not beside him in bed, and had proceeded to search the house for her. He then went outside to look for her, and found her covered with blood in a wooded area just off the driveway. He then wrapped her in sheets and carried her into the house. The defendant walked to where he had claimed to have found the body, pointing out that spot to the second officer, and then returned again to the patrol car.

The chief of police arrived at the scene approximately one half hour later. He was met by the second officer, shown the spot where the defendant claimed to have found the body, and was then taken into the house to view the body. The chief then went to the defendant, introduced himself, and asked the defendant to accompany him to the police station to relate to him the events of that night. The defendant acquiesced in the chief's request.

At the station, the defendant and the chief went into the chief's office, where the defendant drank coffee and smoked cigarettes. As the chief handled various telephone calls, he asked the defendant for a written statement of the night's events. The defendant asked the chief to write down his statement while he spoke. The chief began transcribing the defendant's statement approximately one and one-half hours after the defendant's phone call to the police. As the defendant related his account of events, the chief would lead him back to the events of the night from various digressions, by reading to the defendant the last pertinent sentence. After ten or eleven pages had been transcribed, an inspector from the office of the state's attorney entered, remaining in the office for the remainder of

the statement. At some point, either during the taking of the statement or immediately thereafter, the defendant requested the use of the bathroom. At that time, the chief escorted the defendant to the men's room. Previously, the defendant had consented to the chief's request not to wash his hands. The request was made because the bloodstains on the defendant's hands might be evidence pertinent to the investigation of his wife's death. The chief remained inside the bathroom with the defendant, to be certain that the defendant did not wash his hands. At that time, warrants were being drawn up in another room in the police station, seeking authorization to search both the defendant's home and person.

At trial, in addition to the defendant's statement given to the police, the state introduced a plethora of circumstantial evidence to support its theory that the defendant had committed the homicide. Such evidence included the defendant's clothing, traprock from the driveway, and the brick claimed to have been used to bludgeon the victim, as well as the testimony of various forensic witnesses, of a lawyer consulted by the victim about the dissolution of her marriage, and of two friends of the victim.

The defendant's pretrial motion to suppress his statement was predicated solely upon the requirements of the fifth and fourteenth amendments to the United States constitution that the defendant be made aware of his right to counsel and his right not to incriminate himself.[1] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The defendant in this case never received *Miranda* warnings.

---

[1] The defendant on appeal seeks, pursuant to the principles of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), to have this court consider also his right to due process and his right not to be compelled to give evidence against himself under article first, § 8, of the Connecticut constitution. Although the state constitutional claim is an issue facially implicating a

In order to invoke the warnings constitutionally required by *Miranda* (1) the defendant must have been in custody, and (2) the defendant must have been subject to police interrogation. Id., 444. Custodial interrogation occurs when questioning is initiated by the police and the person questioned has been deprived of his freedom of action in a significant way. *State* v. *Brown,* 199 Conn. 47, 51, 505 A.2d 1225 (1986). Whether custodial interrogation exists for purposes of the *Miranda* warnings is not always self-evident. It is certain, however, that the *Miranda* court was concerned with interrogation which occurs in a police dominated environment, and with interrogation which arises under circumstances likely to weaken an individual's will to resist answering questions. *State* v. *Brown,* supra, 51–52.

In determining whether the trial court erred in refusing to suppress the oral statements of the defendant, a scrupulous examination of the record is necessary in order to ascertain whether its factual findings, made in reaching that conclusion, are supported by substantial evidence. *State* v. *Schifflett,* 199 Conn. 718, 723, 508 A.2d 748 (1986).

A determination of whether the defendant was subject to custodial interrogation requiring *Miranda* warnings must be based on the facts surrounding his questioning by the chief of police. These facts have been previously stated. The defendant was clearly inter-

---

constitutional right with a record sufficient for review, and although the required warnings of *Miranda* have an independent significance under the state constitution; *State* v. *Brown,* 199 Conn. 47, 51 n.3, 505 A.2d 1225 (1986); we will not review the state constitutional claim. The defendant has not argued that the protections afforded him by the state and federal constitutions differ or that they are distinguishable. Since the defendant has not provided us with a separate analysis or any basis for disparate treatment under the state and federal constitutions, our decision rests solely on the federal constitutional claim. *State* v. *Cosby,* 6 Conn. App. 164, 166 n.1, 504 A.2d 1071 (1986).

viewed for the purpose of eliciting his statement in a "police dominated environment." *State* v. *Brown,* supra, 51. "This court has stated that a ' " 'person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' *United States* v. *Mendenhall,* 446 U.S. 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *State* v. *Acquin,* 187 Conn. 647, 655, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983); *State* v. *Ostroski,* 186 Conn. 287, 291–92, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 172, 74 L. Ed. 2d 142 (1982); *State* v. *Derrico,* 181 Conn. 151, 159, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980)." *State* v. *Young,* 191 Conn. 636, 651–52, 469 A.2d 1189 (1983).' " *State* v. *Brown,* supra, 53.

" 'On appeal, in order to determine whether the defendant's constitutional rights have been infringed, we review the record in its entirety and are not limited to the evidence before the trial court at the time the ruling admitting the statements was made.' " *State* v. *Shifflett,* supra, 729, quoting *State* v. *Toste,* 198 Conn. 573, 576, 504 A.2d 1036 (1986). We must look at the relevant facts of the circumstances of the questioning, in order to determine whether a "reasonable person" would have construed those circumstances as placing him in a custody situation. *State* v. *Brown,* supra. The fact that the police chief testified that he would not have prevented the defendant from departing is not dispositive of whether the defendant was in fact subjected to custodial interrogation. *Berkemer* v. *McCarty,* 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984); *State* v. *Brown,* supra, 54.

The facts are that the defendant was covered with blood at the time of the arrival of the officer, that he

had twice been escorted to the police cruiser, that at the time the chief arrived an officer was beside the vehicle to which the defendant had been escorted, that he was taken by the chief directly to the chief's office at the station, that he was there interrogated, that he was not allowed to go to the bathroom alone, and that at no time was the defendant informed that he did not have to accompany the chief or that he was free to leave the police station.

We conclude, based on the totality of the circumstances, that the defendant was in custody and had been deprived of his liberty at the time the statements were made. The defendant's motion should have been granted, and the statement suppressed. "It is not necessary to determine whether these statements are exculpatory or inculpatory because neither type of statement may be used when there has been a custodial interrogation without *Miranda* warnings. . . . See *Miranda* v. *Arizona,* [supra, 444.]" *State* v. *Brown,* supra, 52 n.4. The fact that the statement should have been suppressed is not dispositive of this appeal, as our analysis must turn now to the question of whether the erroneous admission of the statement was, as the state contends, harmless beyond a reasonable doubt. *State* v. *Marino,* 190 Conn. 639, 654–57, 462 A.2d 1021 (1983).

In this case, subsequent to the admission of the statement through the testimony of the police chief, the defendant himself testified. The defendant's testimony corroborated his statement to the chief and was exculpatory in nature. Even if the defendant's statement to the police chief and the defendant's trial testimony, which both served to exculpate and not to inculpate the defendant or to impeach his credibility, were not heard at trial, the jury could still have found the defendant guilty beyond a reasonable doubt. The admission of the

statement and the defendant's testimony were "significant factor[s] in causing the panel not to place the worst construction upon the evidence relating to the occurrence." *State* v. *Marino,* supra, 657. The impact of the error upon the trier and the result could only have been favorable to the defendant. *State* v. *Bruno,* 197 Conn. 326, 336, 497 A.2d 758, cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986) (*Shea, J.,* concurring). While the admission of the statement was error, that error was harmless beyond a reasonable doubt. *State* v. *Marino,* supra; see *Aillon* v. *State,* 168 Conn. 541, 548, 363 A.2d 49 (1975).

## II

The defendant's second claim of error relates to the testimony of two of the state's witnesses. The testimony of these two witnesses concerned their knowledge and understanding of the marital relationship of the defendant and the victim.

The testimony of one witness concerned visits by the victim with the witness which had taken place at least one and one-half years before the death of the victim. That witness testified that on seven or eight occasions the victim had visited her home late at night, and that on those occasions the victim announced her intention to seek a divorce, and that at the time of her final visit a police officer was called by the witness to her home.

The defendant objected to this testimony on the ground of remoteness in time from the night of the victim's death. The court overruled the objection, stating that remoteness was a question for the jury to consider. As the defendant concedes, remoteness clearly goes to the weight to be given to the testimony by the jury. In order to prevail on his claim that this evidence was so remote as to render it irrelevant and, therefore, inadmissible, the defendant must demonstrate that the trial court abused its discretion in admitting the evidence.

*State* v. *DeForge,* 194 Conn. 392, 396, 480 A.2d 547 (1984). This court normally will not interfere with the trial court's exercise of its discretion.

An objection on the ground of remoteness implicates the relevance of the evidence. While the trial court did not specifically state that it found the evidence to be relevant to proving the state's case, that is the clear implication of its decision to admit the testimony. The question which we must consider, therefore, is whether that testimony was in fact relevant to the state's case.

Evidence is relevant when "[i]t tends to establish the existence of a material fact or to corroborate other direct evidence in the case." *State* v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985). Evidence of the relationship of the defendant and his wife is relevant to proof of their stormy marriage and therefore relevant to the motive or intent of the defendant. *State* v. *Zdanis,* 173 Conn. 189, 191–92, 377 A.2d 275 (1977). "Motive is a fact which may be inferred from circumstances; hence the circumstances from which it may be inferred are relevant." *State* v. *Buonomo,* 88 Conn. 177, 184, 90 A. 225 (1914). While the evidence was of events remote in time, that remoteness does not affect relevancy, but only the weight of the evidence. See *State* v. *Zdanis,* supra, 192.

When evidence is relevant to demonstrating such things as motive, intent or malice of the defendant, the trial court may admit the evidence if it determines that its probative value outweighs its prejudicial impact. *State* v. *Falby,* 187 Conn. 6, 23–24, 444 A.2d 213 (1982); *State* v. *Tucker,* 181 Conn. 406, 415, 435 A.2d 986 (1980). In matters of the court's discretion on evidentiary rulings, "every reasonable presumption should be given in favor of the trial court's ruling." *State* v. *Ryan,* 182 Conn. 335, 337, 438 A.2d 107 (1980). The trial court, in its discretion, allowed the jury to weigh this

evidence as it would any other piece of evidence, and the inferences which could be drawn therefrom were left to the jury. The defendant has not demonstrated a clear abuse of discretion in admitting this evidence.

The second witness testified that during the course of her relationship with the victim she had on occasion observed the victim with black eyes and a swollen lip, and that following a discussion of how those injuries were sustained the witness offered the victim the option of going to the witness's home if there was ever a time when she was frightened. The witness then stated that the victim replied: "Don't be surprised if I come over sometime during the night." The defendant objected to this testimony as hearsay. The court overruled the objection on the ground that the state was not attempting to prove the truth or falsity of the matter asserted.

This witness's first statement was objected to, in the state's offer of proof, as irrelevant, and, if relevant, prejudicial. The relevance of this statement is that it relates to the circumstances of the relationship of the defendant with his wife, and thus to a motive for the act of the defendant or to the specific intent of the defendant. *State* v. *Tucker,* supra. The defendant claims that the statement was highly prejudicial to him as it allowed the jury to draw inferences based upon speculation and conjecture. It is the duty of the trial court to weigh the balance between probative value and prejudicial impact. This evidence was probative of the motive or intent of the defendant and was part of the history of the dispute between the parties. See *State* v. *Zdanis,* supra, 191–92. The defendant has not demonstrated a clear abuse of discretion in this instance, and we will not overturn an evidentiary ruling, absent such a showing. *State* v. *DeForge,* supra.

The second statement, objected to at trial as hearsay, was not stricken by the trial court, as it determined

that it was not offered to prove the truth of the matter asserted. The defendant, in his brief, agrees with the trial court's determination that this statement is not hearsay, but contends that the statement was irrelevant. This evidence supports the state's establishment of a motive or of the specific intent of the defendant's acts, a motive or intent to be found in the relationship of the parties. Again, that ruling was within the discretion of the trial court, and will not be overturned absent a showing of a clear abuse of that discretion. *State* v. *DeForge*, supra.

The relevance of each witness' testimony lies in the fact that it serves as an inferential link between the defendant and the crime with which he was charged. See *State* v. *McIntosh*, 199 Conn. 155, 162–63, 506 A.2d 104 (1986); *Eason* v. *Williams*, 169 Conn. 589, 591, 363 A.2d 1090 (1975); *State* v. *Kelly*, 77 Conn. 266, 269, 58 A. 705 (1904). It was not error to admit the testimony of either witness.

### III

The third issue of this appeal is the defendant's claims of error in the jury charge. The defendant claims that the trial court erred in not instructing the jury that a fact to be inferred from circumstantial evidence must be proved beyond a reasonable doubt, and that the court erred in defining "reasonable doubt." The defendant did not raise these claims at trial, but they implicate his "right[s] to due process of law under the fifth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9 of the Connecticut constitution. See *Mullaney* v. *Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)." *State* v. *Derrico*, 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); *State* v. *Farrar*, 7 Conn. App. 149,

153 n.3, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986). As such, and because the record is sufficient to review them, we review the claims to determine if there 'was, in fact, a deprivation of a constitutional right. *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

The trial court, in its charge to the jury on circumstantial evidence and the inferences they could draw from such evidence, stated in a portion of its charge that once the jury had determined whether events or facts testified to did exist, they had to decide whether those facts and circumstances "force[d] [them] as jurors logically to the conclusion that other facts existed and other events occurred, and ultimately, that the crime was committed by the accused." The jurors were further instructed that if they did find "certain facts proven . . . beyond a reasonable doubt and the only reasonable inference to be drawn from the existence of those facts is that the accused committed the crime charged, then it [was their] duty to draw that inference and find him guilty."

The defendant asserts that these statements, culled from the entire jury charge, demonstrate that the trial court advised the jury that facts to be inferred did not have to be proven beyond a reasonable doubt, thus violating the defendant's rights to due process of law. *In re Winship,* supra. The defendant's claim relies upon *State* v. *Rodgers,* 198 Conn. 53, 56–59, 502 A.2d 360 (1985). In that case, the instruction found to be erroneous had advised the jury "that an inference may be drawn [from circumstantial evidence] provided 'that it is more probable that the fact to be inferred is true.' *State* v. *Rodgers,* supra, 57." *State* v. *Farrar,* supra, 154.

In the present case, the factual issues to be determined were both the identity of the victim's assailant, and the intent of the defendant, if he were proven to

be the assailant. One of the principal factual issues for which the circumstantial evidence was needed was to prove intent, and, therefore, the trial court's instructions regarding the use of this evidence is subject to close scrutiny. *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86, cert. denied,    U.S.    , 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986); *State* v. *Farrar,* supra, 155. A jury "must be satisfied that the fact to be inferred *has been proved* beyond a reasonable doubt." (Emphasis in original.) *State* v. *Rodgers,* supra. The question which we face is whether the trial court properly charged the jury that the state bore the burden of proving inferential facts beyond a reasonable doubt.[2]

---

[2] The pertinent portions of the jury charge were as follows: "Direct evidence of an event or a crime is the testimony of an eyewitness or witnesses who come into court and say that he or they saw the event or crime occur. Circumstantial evidence of an event or a crime is the testimony of witnesses to the existence of certain facts, the happening of other events, or physical evidence from which you, the jury, may logically conclude that the event in question occurred and how it occurred.

"Because of the fact that crimes and essential parts of crimes are often committed in secret, it frequently happens that there are no eyewitnesses to the crime itself or some elements of it and that, therefore, there is no direct evidence that the crime or certain elements of it have been committed by the accused. For that reason it often happens that the commission of a crime by a certain accused or some elements of the crime can be proved, if they are going to be proved at all, only by circumstantial evidence. The only practical difference between direct and circumstantial evidence is that when you have direct evidence of the commission of a crime, the only thing that you, the jury, have to do is pass upon the credibility of the testimony given, whereas with circumstantial evidence you first have to determine the credibility of the witnesses, decide whether the events or facts and circumstances testified to did in fact happen or exist, and then you have to decide whether the happening of those events, the existence of those facts and circumstances, forces you as jurors logically to the conclusion that other facts existed and other events occurred, and ultimately, that the crime was committed by the accused.

"Now, there is no reason for you to be prejudiced against circumstantial evidence simply because it is circumstantial evidence. You obviously make decisions on the basis of circumstantial evidence every day of your life. There is no reason why decisions on the basis of circumstantial evidence should not be made in the courtroom. In fact, proof by circumstantial evidence may be as conclusive as would be the testimony of witnesses speaking on the basis of their own eyewitness observations. Of course, in passing upon

The instruction complained of occurred during that portion of the charge distinguishing direct and circumstantial evidence, after the court had defined the state's burden of proof as that beyond a reasonable doubt. Cf. *State* v. *Rodgers,* supra, 58. The trial court immediately thereafter instructed the jury several times that, on the basis of circumstantial evidence, they had to find beyond a reasonable doubt that the facts or circumstances did exist, that they were led, beyond a reasonable doubt, to the conclusion that the crime was committed by the accused, and that, if there were a reasonable explanation for the facts other than that the accused committed the crime charged, then the state would not have proven its case. The court further instructed the jury several times that the intent with which the defendant acted had to be proved beyond a reasonable doubt. The instructions on circumstantial evidence and the use of inferences, reviewed as a whole, were not erroneous.

---

the guilt of an accused person on the basis of circumstantial evidence, you must be satisfied beyond a reasonable doubt, first, that certain facts or circumstances exist, and second that the existence of those facts or circumstances do, beyond a reasonable doubt, lead you logically to the conclusion that the crime was committed by the accused. Unless the existence of the facts and circumstances you find proven compels you as reasonable men and women [to] only one conclusion—namely, that the accused is guilty—then, of course, you would not be justified in finding him guilty. If the existence of all the facts and circumstances which you believe existed can be reasonably explained on some basis other than the accused committed the crime charged, then the State has simply not made out a case. If the evidence you believe can be explained on some other basis, obviously, that would create a reasonable doubt and the State would not have made out its case. But, if you find certain facts have been proven to you beyond a reasonable doubt and the only reasonable inference to be drawn from the existence of those facts is that the accused committed the crime charged, then it is your duty to draw that inference and find him guilty. Of course, where there are several separate facts or circumstances, each tending to prove the guilt of the accused, the question for you to decide is not whether such facts or circumstances taken separately from the rest convinces you beyond a reasonable doubt of the guilt of the accused, but rather whether all the circumstances taken together are sufficient to satisfy you beyond a reasonable doubt that the accused is guilty."

The defendant's final claim is that the instruction of the court on reasonable doubt, "a doubt based on reason" or "a doubt for which you can, in your own minds conscientiously find a reason," was erroneous. Such a charge has been upheld in the courts of this state, and the defendant makes no compelling argument for the overturning of settled precedent. See *State* v. *Moss*, 189 Conn. 364, 368, 456 A.2d 274 (1983); *State* v. *Derrico*, supra, 170–71.

There is no error.

In this opinion the other judges concurred.