[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
STATEMENT OF THE CASE
The defendant, Richard Hamlin, was arrested and charged with the crimes of Assault in the First Degree in violation of General Statute § 53a-59
(a)(5) and Carrying a Pistol without a Permit in violation of General Statute § 29-35 (a). On December 16, 2002 the defendant filed a Motion to Suppress, alleging that the identification of the defendant as the perpetrator of the crimes violated his constitutional rights. The court held an evidentiary hearing over the course of two days, where the state and defense presented evidence concerning the defense's claim.
 FACTS
The defendant, Richard Hamlin, has been identified as the person who committed the crimes charged by two men, the victim, Omar Vaughn, and a friend of the defendant's, William Moore. The defense has made a Motion to Suppress the Identification of Richard Hamlin as the person who shot the victim.
Based on the evidence heard on the motion, this court finds the following facts. On June 25, 2001 at approximately 2:00 PM, the defendant and William Moore were standing with a group of people in front of the GF store at the corner of Mather and Garden streets in Hartford. The victim, Omar Vaughn rode his bicycle toward GF store, and when he was almost in front of the store, a person stepped out from the crowd, yelled out to Vaughn and proceeded to shoot him. The defendant then ran to a gold Alero parked across the street from the GF store and drove away with Moore.
On July 19, 2001 Detective Koch of the Hartford Police Department called Vaughn to inform him that he was the detective assigned to investigate the shooting. While speaking to Vaughn on the phone, Vaughn informed Det. Koch that the name of the person who shot him was Richard CT Page 4034 Hamilton or Hamlin. Det. Koch compiled a photo array with the picture of the defendant, Richard Hamlin, contained in it and met Vaughn that same day at his place of employment.
When Det. Koch showed the array containing 8 photos of similar looking males to Vaughn, Vaughn chose the picture of the defendant as being the person who shot him. Det. Koch had not told Vaughn that there was anyone in the photo array who he should choose. Also there was no testimony that Det. Koch in any way suggested to Vaughn to choose the photo of the defendant. Vaughn then circled and signed the array to "memorialize" his selection of the defendant as the person who shot him.
On December 17, 2002 William Moore was transported to the State's Attorney's Office in Hartford, and met with Inspector Rovella of the Hartford State's Attorney's Office and Det. Koch. Insp. Rovella presented a packet of eight photos to Moore. These photos were the same photos presented to Vaughn, but the photos had been renumbered, and separated so that they could be viewed one by one instead of all at once. Moore reviewed the photos one by one, and chose the picture of the defendant as the person who shot Vaughn. Moore signed and dated the photo, and initialed the remaining photos in the packet. Insp. Rovella also signed the photo of the defendant and initialed the remaining photos of the packet. During the presentment of the photo packet to Moore, neither Insp. Rovella nor Det. Koch made any comments or suggestions to Moore concerning who was in the packet of photos or who Moore should pick out of the packet.
Moore testified that he has known the defendant for four or five years, and considers him his "ace in the hole" a reference that the defendant was Moore's best friend. Vaughn testified that he has known the defendant as "Rich" for a number of years from hanging around in the neighborhood. Vaughn testified that he took it upon himself to find out who shot him, and informed the police that the person who shot him was Richard Hamlin or Hamilton.
The shooting occurred during the day, in the summer months. The people involved were all known to each other, and were in relatively close proximity to each other when these events occurred.
 LAW
A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. To succeed on the motion to suppress, the defendant must prove (1) that the identification procedures were CT Page 4035 unnecessarily suggestive, and (2) that the resulting identification was not reliable in the totality of the circumstances. (Internal quotation marks omitted; internal citations omitted.) State v. Rivera,74 Conn. App. 129, 144 (2002).
First this court must determine if the identification procedure used was unnecessarily suggestive. Based on the facts outlined previously, this court finds that the procedures used did not "give rise to a very substantial likelihood of irreparable misidentification." State v.Colon, 70 Conn. App. 707, 720-21, 799 A.2d 317 (2002). The police in both instances used multiple photographs, and did not rely upon a single photo. The arrays themselves were composed of photos of individuals who all strongly resembled the defendant. There were no suggestions made to either Vaughn or Moore that a photo of the suspected perpetrator was located in the arrays presented to them. There were no verbal or physical hints given by the police to Vaughn or Moore to suggest to them who they should select from the arrays, or even that they should select someone from those arrays.
Assuming for the sake of argument that the police had in fact tainted the identification procedure, this court would then have to determine whether, taking all the circumstances of the crime and the resulting identification into account, the identification was reliable. The circumstances of the commission of the crime lend themselves to a determination that the identification was reliable. The perpetrator and the victim were in close proximity during the daylight hours when the shooting occurred. Moore was in close proximity to the perpetrator and the victim when the shooting occurred. Moore accompanied the defendant in the gold Alero after the shooting. The very fact that the defendant was known to both individuals who identified him makes the identification very reliable under the totality of the circumstances.
These circumstances would clearly outweigh any but the most egregious suggestiveness. In this case, where this court has found that the police committed no acts which tainted the identification, the reliability of the identification under the totality of the circumstances buttresses this court's decision in this matter.
Based on these findings and conclusions, defendant's Motion to Suppress Identification is DENIED.
 By the Court, Mullarkey, J.
CT Page 4036