STATE OF CONNECTICUT *v.* JOSE A. PAGAN, JR.
(AC 28199)

Harper, Lavine and Beach, Js.

Argued January 15—officially released April 15, 2008

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Lawrence J. Tytla*, supervisory assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

LAVINE, J. The defendant, Jose A. Pagan, Jr., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the trial court improperly denied his motion to suppress his statements that were made without the benefit of a *Miranda*[1] warning. We affirm the judgment of the trial court.

The following procedural history and facts are relevant to the defendant's appeal. The defendant was charged in a six count substitute information with three counts of sexual assault in the first degree for engaging in sexual intercourse with a female who was younger than age thirteen; see General Statutes § 53a-70 (a) (2); and three counts of risk of injury to a child for having contact with the intimate parts of a child younger than sixteen and for subjecting the child to contact with his intimate parts in a sexual and indecent manner likely to impair the health and morals of the child. See General Statutes § 53-21 (a) (2).[2] Prior to the start of evidence, the defendant filed a motion to suppress an alleged confession he made to police officers on April 20, 2005.[3] After the victim and her cousin, who was the defendant's former fiancee,[4] had testified, the court heard evidence on the motion to suppress. The court found the following facts.

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] The jury found the defendant not guilty of four of the charges against him.

[3] In his motion to suppress, the defendant represented that he "was interrogated by the police during which time the police allege he made incriminating statements. Given that the defendant was not advised of his *Miranda* rights . . . he respectfully moves to have said statements suppressed."

[4] We decline to identify the victim or others through whom the victim's identity maybe ascertained in accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child. See General Statutes § 54-86e.

Christopher Kramer, a New London police officer, was dispatched to 57B Michael Road, the defendant's residence on the date in question. The dispatch was at the defendant's request, as he had complained to the police that he was receiving harassing telephone calls from the victim. The defendant met Kramer in the parking lot and invited him into his apartment to discuss the nature of the allegedly harassing telephone calls. While the two were talking, Robert Pickett, another New London police officer, arrived at the defendant's apartment. Pickett had been investigating the victim's complaints of sexual assault against the defendant. Prior to Pickett's arrival, Kramer was unaware of the victim's complaints.

Kramer met Pickett outside the door to the defendant's apartment to talk, and then the officers entered the defendant's apartment together. Kramer was wearing a police uniform; Pickett was in plain clothes. Pickett identified himself to the defendant as a police officer. The defendant presented his operator's license when Pickett requested his identification. There is no dispute that the defendant was not advised of his rights pursuant to *Miranda.* Pickett informed the defendant of the victim's allegation of sexual assault and showed him receipts Pickett had obtained from the Red Roof Inn, where a sexual assault allegedly had taken place. Pickett told the defendant that he was just trying to ascertain the truth. The defendant made certain incriminating statements to the officers.[5] While they were in the apartment, Pickett did not tell the defendant that he was

---

[5] Pickett testified during the hearing on the motion to suppress that after he told the defendant that he had receipts from the Red Roof Inn, he asked the defendant if he had had sex with the victim. According to Pickett, the defendant said that "he did but he could not recall how many times, but stated that there was two times specifically that occurred at 57B Michael Road."

Pickett also testified that during their trip to the police station, the defendant told him that "he did put his penis inside of her but pulled out because it hurt her." Pickett also testified that the defendant told him while they were in the police vehicle that "the reason he had sex [with the victim] was because he felt that he was a brother toward her and didn't want another

under arrest, nor did he tell him he could leave, as the defendant was in his own apartment.[6]

Pickett asked the defendant to go to the police station to give a written statement, and the defendant agreed to the request. The defendant may have thought that he was going to the police station to talk about his complaint about harassing telephone calls. Pickett was taking the defendant to the police station, however, to talk about the allegations of sexual assault. Kramer did not accompany them.

During the trip to the police station, the defendant voluntarily sat unrestrained in the front seat of Pickett's unmarked police vehicle. While he was in the police vehicle, the defendant made a cellular telephone call to his then fiancee and said that he was on the way to the police station. The defendant did not tell his then fiancee that he had been restrained in his apartment, that the door had been locked, that he was not going to the police station freely or that Pickett had done anything coercive to make him think that his movements were restrained or that he was under arrest. When they arrived at the police station, the defendant asked to telephone his attorney. Pickett permitted him

man or another boy treating her with disrespect." The defendant denied making those statements to Pickett.

[6] According to the police, the tone of the conversation was calm, but the defendant testified to the contrary. The defendant testified that when Pickett entered the apartment, Pickett closed and locked the door. The defendant also testified that Pickett took a hard line with him, calling the defendant a liar and wanting to know about the sexual contact that the defendant had had with the victim. He further testified that Pickett put words in his mouth. The court did not credit the defendant's testimony that the police held him in his own apartment and that Pickett's behavior was coercive, causing the defendant to feel that he was restrained. The court supported its credibility determination by citing the fact that the defendant was unrestrained when he was transported to the police station, and the substance of the defendant's cellular telephone conversation with his then fiancee, made during the trip, did not include any assertion that he was being compelled to cooperate while he was in the police vehicle.

to do so. Pursuant to his attorney's advice, the defendant declined to give Pickett a written statement. The interview stopped, and Pickett took the defendant back to his apartment. The court found that there was no restraint of any kind imposed on the defendant, that he was not under arrest and that the nature of the questioning in his apartment was cursory.

On the basis of those findings, the court concluded that nothing of significance with respect to the motion to suppress transpired at the police station and that it was the interaction between the officers and the defendant that occurred in the defendant's apartment that was relevant to the motion to suppress. The court determined that the crux of the issue was not whether Pickett interrogated the defendant but whether the defendant made the alleged remarks. The court ultimately found, in reliance on its factual findings and the relevant law, that the defendant voluntarily agreed to go to the police station and that the circumstances did not require the officers to give the defendant a *Miranda* warning. In summary, the court stated that it would deny the motion to suppress and permit the state to place the defendant's allegedly incriminating statements into evidence so that the jury could make the credibility determination as to whether the defendant had made them.

On appeal, the defendant claims that the court improperly concluded that a reasonable person in his position would have thought that he was at liberty to terminate the interview. He also argues that the court did not give sufficient weight to the fact that although he invited Kramer into his apartment, he did not invite Pickett into his home. "Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda*: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. . . . [A]lthough the circumstances of each case must certainly influence

a determination of whether a suspect is in custody for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. . . . Further, the United States Supreme Court has adopted an objective, reasonable person test for determining whether a defendant is in custody. . . . Thus, in determining whether *Miranda* rights are required, *the only relevant inquiry is whether a reasonable person in the defendant's position would believe that he or she was in police custody of the degree associated with a formal arrest.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Britton*, 283 Conn. 598, 604, 929 A.2d 312 (2007).

"The defendant bears the burden of proving that he was in custody for *Miranda* purposes. . . . Two discrete inquiries are essential to determine custody; first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. . . . The first inquiry is factual, and we will not overturn the trial court's determination of the historical circumstances surrounding the defendant's interrogation unless it is clearly erroneous. . . . The second inquiry, however, calls for application of the controlling legal standard to the historical facts. . . . The ultimate determination of whether a defendant was subjected to a custodial interrogation, therefore, presents a mixed question of law and fact, over which our review is de novo." (Internal quotation marks omitted.) Id., 605.

On the basis of our review of the transcript, the court's memorandum of decision and the relevant law, we conclude that the court properly determined that the defendant was not in custody at the time he made incriminating remarks to Pickett. There is no dispute

as to how or why Kramer and Pickett came to be in the defendant's apartment on the afternoon in question. The tone, nature and tenor of the conversation between the officers and the defendant with respect to the victim's claim that the defendant had sexually assaulted her is the substance of the defendant's claim. The defendant claimed that Pickett locked the door and called him a liar. Pickett and Kramer both deny that Pickett locked the door. The court found that the defendant's testimony about the conversation was not credible. It is well established that appellate courts do not make credibility determinations. See *State* v. *Rivera*, 74 Conn. App. 129, 136, 810 A.2d 824 (2002). We are bound by the court's factual determination that the defendant's testimony concerning the coercive nature of Pickett's questioning was not credible.

Moreover, the court supported its credibility decision with the conclusion that the defendant got into Pickett's police vehicle voluntarily, that he was not restrained and that he sat in the front passenger seat and made a cellular telephone call to his then fiancee. The defendant did not offer any evidence that during that telephone call he told his then fiancee that his trip to the police station was not voluntary, that he was restrained in his apartment or that the door was locked. Pickett permitted the defendant to telephone his lawyer, as is required by law, and ceased the interview when the defendant, on the advice of counsel, said that he would not provide a written statement. Pickett then drove the defendant back to his apartment.

The defendant has failed to uphold his burden to demonstrate to this court that the trial court improperly concluded that he was not in custody in his apartment when he made incriminating statements to the officers. The court's factual findings as to the circumstances of Pickett's questioning the defendant are supported by evidence in the record. This court does not set aside a trial court's factual findings unless they are clearly

erroneous. See *State* v. *Jones*, 281 Conn. 613, 654, 916 A.2d 17, cert. denied. 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). The defendant was in his own home, and he initiated the police presence by making a harassment complaint against the victim. Although Pickett did not arrive to discuss the harassment complaint, the defendant at no time told him he was not welcome to enter the apartment. The defendant had access to a telephone, which he used in the police vehicle to call his then fiancee and at the police station to speak with his lawyer.

The circumstances under which Pickett questioned the defendant are similar to those in *State* v. *Johnson*, 241 Conn. 702, 699 A.2d 57 (1997). In *Johnson*, "[t]he detectives, who had approached the defendant at his father's home, had asked the defendant if he would speak with them, and he had voluntarily agreed to do so. The interview took place in the familiar surroundings of his father's kitchen. There was no evidence that the defendant was ever handcuffed or otherwise restrained at the time of the statements, nor did the officers use or threaten the use of force, or display their weapons. The court expressly found that the police had been neutral and reserved. The defendant had access to a telephone. The defendant's father entered the kitchen during this period. The defendant never expressed a desire to leave, stop talking, or speak with his father." Id., 719–20. Under those circumstances, our Supreme Court could not conclude that the defendant had met his burden of proving custodial interrogation. Id., 720.

The defendant here has not brought to our attention any basis to believe that he was not free to terminate Pickett's interview, except that the court's credibility determination was erroneous. That is not sufficient to carry his burden.

The judgment is affirmed.

In this opinion the other judges concurred.